**STATE, Plaintiff-Appellee, v. SKYPECK, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20197.  Decided November 26, 1945.

Frank T. Cullitan, County Prosecutor, Cleveland, for plaintiff-appellee.

Joel Krupman, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, P. J.

This case comes to this court on questions of law. The defendant was arrested on a charge of grand larceny. The defendant entered a plea of guilty to the indictment. On November 16, 1944, the court suspended the imposition of sentence and put the defendant on probation to W. B. Dillon Chief of the Probation Department of the Common Pleas Court of Cuyahoga County, for a period of five years.

On June 11, 1945, a capias was ordered for the defendant by a judge other than the one who put the defendant on probation. On June 12, 1945, the defendant was brought before the court. Thereupon, after a conference between the judge, the deputy probation officer and defendant's counsel, in which it was stated that the court had ordered defendant's arrest on information received from a member of the Cleveland Police Department, the following procedure is disclosed by the record:

"The Court: I desire to inform you gentlemen that I take full responsibility for the issuance of the capias for the arrest of Michael Skypeck based upon information that I have received from a member of the Cleveland Police Department and not by reason of any action on the part of the Probation Department."

"Thereupon, the parties hereinabove named then returned to open court and the following proceedings were had in the presence and hearing of the defendant, Michael K. Skypeck:

The Court: Michael Skypeck, what have you been doing for a living since you have been placed on probation?

The defendant: I was placed on probation December, 1944, by Judge Baer. Prior to that time and for some period after being placed on probation, I worked at the East 105th Street Service & Parking Station located on East 105th Street near Euclid Avenue. When my probation officer, Mr. Schiffer, requested that I get away from the East 105th Street and Euclid Avenue center, I then was employed as a car service man at a garage in Cleveland Heights. My mother became ill

and Mr. Schiffer allowed me to go to Massachusetts where she lives, where I spent one week and returned, reporting to him. I then worked in the West Side Market. I have worked all during that period except about three weeks. The last two weeks I have been painting and paper-hanging my home where I live with my wife and child. I also helped Mr. Krupman in the office while he was without a stenographer.

The Court: I don't believe you. Haven't you been doing some gambling?

The defendant: I did some gambling before I was put on probation but not since.

The Court: Where do you get the good clothes that you wear?

The defendant: I had those clothes before I was placed on probation.

The Court: Where do you get the money you have been spending?

The defendant: I have been working pretty steady for the past year and a half, and have had some saved.

The Court: You have a bad past record and although I hate to act as the Court of Appeals in reviewing Judge Baer's decision to place you on probation last term, nevertheless, I am going to order the original sentence into execution. Ohio State Penitentiary.

Mr. Krupman: Counsel for defendant excepts.

The Court: You may have your exception."

The above constitutes the entire record in this case.

This appeal is from the judgment that was entered by which the defendant was sentenced to the penitentiary upon the revocation of his probation.

The first claim of the defendant is that the court erred in ordering "the original sentence into execution" when no sentence had yet been imposed, without first complying with §13451 GC, by informing the defendant of the decision of the court and inquiring whether he had anything to say why judgment should not be pronounced.

It is true that until the order revoking probation was made, no sentence had yet been imposed. But the order revoking probation and ordering defendant sent to the penitentiary was sufficient where the defendant had entered a plea of guilty. And further the record discloses that §13451-1 GC was fully complied with by the court at the time the defendant was placed on probation.

The second question presented by this appeal is the de-

fendant's claim that there was no evidence that the defendant had violated the terms of his probation, and that the court failed to afford him a proper hearing as provided by §§13452-4 to 7 inclusive, GC.

Sec. 13452-4 GC provides:

"Upon entry in the records of the judge or magistrate of the order for probation provided for in this chapter, the defendant shall be released from custody as soon as the requirements and conditions required by the judge supervising the probation, have been properly and fully met, but shall continue under the control and supervision of the department of probation or probation officer, as the case may be, to the extent required by law, the terms and conditions of the order of probation and the rules and regulations governing said department of probation."

Sec. 13452-5 GC reads:

"The probation provided for in this chapter shall continue for such period as the judge or magistrate shall determine, and may be extended from time to time, the total period, however, not exceeding five years, but if, during such period, the probationer absconds or otherwise absents himself from the jurisdiction of the court, without permission from the probation department, or the court, so to do, or if he is confined in any institution for the commission of any offense whatever, the probation period shall cease to run until such time as he is brought before the court for its further action under this act."

In this case the trial judge determined that the probation should continue for five years.

Sec. 13452-7 GC reads:

"When the defendant is brought before the judge or magistrate, such judge or magistrate shall immediately inquire into the conduct of the defendant and may terminate the probation and impose any sentence which might originally have been imposed or continue the probation and remand the defendant to the custody of the probation authority, at any time during the probationary period fixed as herein provided, when the ends of justice will be served and the good conduct of the person so held shall warrant it, the judge or magistrate may terminate the period of probation * * *."

The foregoing sections are a part of Chapter 31 of the

Code of Criminal Procedure, dealing with the subject of probation. These sections supersede the power of the court at common law to place a defendant on probation after he has been found guilty of or had plead guilty to a crime in a court of competent jurisdiction.

The history of these sections of the Code go back to an Act of the Legislature passed by the 77th General Assembly in 1908 (98 O. L. 339) which became §§2210 to 2215 GC of Title 5, Division 4 of Chapter 3 and §§13706-1 to 15 GC inclusive of Title 11, Chapter 11 of the General Code. The procedure provided for in case of the claim that a defendant who had been placed on probation had violated the conditions of his probation, was contained in §2213 GC and in part provides:

"If a person placed on probation fails to conduct himself in accordance with the rules and regulations of the institution in whose charge he has been placed, a field officer thereof without a warrant or other process, because of such failure, may arrest and convey him to the institution and the board of managers, after full investigation and a personal hearing, may further terminate the probation and cause him to suffer the penalty of the sentence previously suspended. * * * *"

It is to be noted that a hearing was provided for. The Board of Managers of the institution to which defendant had been sentenced, were not authorized to terminate an order of probation except in the manner provided by the statute. Later the legislature empowered the court to create a probation department or to appoint a probation officer and to order a defendant placed on probation under the supervision of such probation officer. (110 O. L. 110) (111 O. L. 428). See §13709 GC.

Sec. 13711 GC (now §13452-7 GC) provides in part that:

"A defendant who has been placed on probation may be brought before the court" (when it is claimed that he has violated the conditions of his probation) "and the court * * * shall immediately inquire into his conduct * * *."

It is clear from this history of the legislation dealing with the rights of a court to place on probation a defendant found guilty of a crime, or after he had plead guilty to a criminal charge, that after such defendant was placed on probation, the order of probation could not be revoked ex-

cept upon a hearing or judicial inquiry as to whether or not he had violated the terms of his probation.

Such a rule is supported by the great weight of authority outside the State of Ohio.

In the case of State v Bonza, 150 Pac. 2nd 970 (Sup. Ct. of Utah) the defendant had been placed on probation under certain conditions, including the duty to make restitution and obey the laws of the State. During the term of probation an affidavit was filed with the court alleging that the defendant had been found guilty of petit larceny and that he also had burglarized a certain building. Upon hearing, the court terminated his probation, finding that the conditions of his probation had been violated. The defendant contended that as to the charge of burglary he must be found guilty by a trial before such charge could be used against him on the question of his violation of the conditions upon which his probation was granted. The court found against him- on this contention. The section of the Code of Utah under which probation was granted, provided in part: (Statute 105, 36-17 U. C. A.):

"Upon conviction of a crime or offense if it appears compatible with the public interest, the court having jurisdiction may suspend the impositon or the execution of sentence and may place the defendant on probation for such period of time as the court shall determine. The court may subsequently increase or decrease the probation period and may revoke or modify any conditions of probation * * *."

The court in concluding that the defendant is entitled to a hearing before his probation can be revoked, said: (parag. 11 of the opinion, page 972)

"A defendant out of prison on probation is accorded due process of law by the following steps, all of which were followed in this case: (1) the filing of a verified statement or an affidavit in the case setting forth facts which show a violation of the terms of probation. (2) The issuance of an order to show cause and citation thereon requiring the defendant to appear and show cause why probation should not be revoked, apprising defendant of the ground or grounds on which revocation is sought, and specifying a proper time for hearing. (3) A hearing before the court on the question of violation of some term of condition of probation, at which the defendant has the opportunity to cross-examine witnesses against him and also to present evidence to refute

**the claimed violation** of the conditions of probation. (4) A determination of the question, followed by entry of an appropriate order. (State v Zolantakis supra)"

And headnote 4 is as follows:

"4. Defendant must be given opportunity to be heard before revocation of probation. (Utah Code 1943, 105-36-17)."

In the case of State v Smith, 146 S. E. 73, (Sup. Ct of N. C.) the defendant had been found guilty of slander and sentenced, the sentence being suspended and defendant placed on probation. Thereafter, the order of probation was revoked and defendant prosecuted error from such order. The supreme court in the opinion said:

"It does not appear from the record that the defendant was offered an opportunity in open court to be heard upon the question as to whether he had violated the conditions upon which the original judgment was suspended. Neither is there any evidence or finding of fact to the effect that any of said conditions had been violated."

Thereupon the court sustained the defendant's objections to the order appealed from and headnote 1 provides:

"1. Where, on defendant's conviction for slander, capias on sentence was postponed on condition of defendant's good behavior, and engaging in regular occupation, subsequent judgment enforcing sentence without giving defendant opportunity in open court for hearing on question of whether he had violated conditions, and without evidence or finding as to violation of conditions, was unauthorized."

The order of the court in the instant case suspending the imposition of sentence upon the defendant and placing him on probation was as follows:

"Dec. 16, 1944. To Court: The defendant herein having on a former day of this term entered a plea of guilty to the charge of the indictment in this case; was this day brought into court in custody of the sheriff; and the said defendant being inquired of if he had anything to say why judgment should not be pronounced against him and having nothing but what he hath already said: It is therefore ordered and adjudged by the Court that imposition of sentence in this case be and

the same hereby is suspended for a period of five (5) years and the defendant is placed on probation for the said period of five (5) years, under the supervision of W. B. Dillon, on conditions of good behavior etc."

In the light of this entry, the general rules of the probation department were applicable, which in brief are, as disclosed by the transcript: To work regularly and when out of work to report such fact to the Probation Department; to live a clean life and keep away from undesirable places; to make reports at stated intervals to the department; not to leave the jurisdiction of the court without auhority; and to follow all instructions of the probation officer. There is no evidence in the record that the defendant violated any of these provisions. The record discloses that the probation department did not participate in any inquiry nor did that department present any evidence of a failure of the defendant to comply with the terms of probation.

The determination of whether or not the defendant, by his conduct, violated the requirements of his probation is under §13452-7 GC to be determined by a "judicial inquiry." The defendant must be afforded a reasonable opportunity to be heard. This does not require the formality of a trial but it does require the presentation of the facts in open court so that the court, in the exercise of sound discretion may deal justly with the defendant.

It is the opinion of the majority of this court that the colloquy between the court and defendant, which makes up the complete record of the case, did not constitute a judicial inquiry into the conduct of the defendant as required by §13452-7 GC and that the action of the court in ordering the original sentence into execution was a clear abuse of discretion.

The state has called our attention to the case of **In re Weber, 75 Oh Ap 206,** as supporting the contention that the court may sua sponte revoke the suspension of a sentence even during good behavior. The case is not in point because the court in that case was primarily concerned with the question of whether or not a writ of habeas corpus was the proper remedy to seek relief from claimed irregularities in the proceedings. It was there concluded that such a writ was not the proper remedy. The court does, on pages 207 and 208 of the opinion, give some consideration to the question of the court's power to revoke a former probation order without an "inquiry" as provided by §13452-7 GC. The court cites

Weber v State, 58 Oh St 616 as the basis of its conclusion. That case, which was decided before the chapter on probation became the law of this state, held on page 619 as follows:

"But when the suspension is without express condition as in this case, it is within the power of the court to set aside the suspension at any time during the same term on its own motion and to order the sentence into execution."

In the case here under consideration, there were express conditions upon which the defendant was afforded probation, and the order revoking probation was not in the same term of court. It is clear, therefore, that Weber v State, supra, is not in point in the instant case when the facts are totally different and the statutes enacted since the date of such decision have completely modified the common law rule.

For the foregoing reasons the judgment is reversed and the cause remanded for further proceedings according to law.

MORGAN, J., concurs.
LIEGHLEY, J., dissents.